UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**DENNIS RYDBOM,**

    **Plaintiff,**

v.                                            **Case No. 2:15-cv-12155**

**LISA BOGGS, Supervisor II,**
**Mount Olive Correctional Complex,**
**DAVID BALLARD, Warden,**
**Mount Olive Correctional Complex, and**
**JAMES RUBENSTEIN, Commissioner,**
**West Virginia Division of Corrections,**

    **Defendants.**

## PROPOSED FINDINGS AND RECOMMEDANTION

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court is the defendants' Motion to Dismiss Complaint (ECF No. 14).

## THE PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

On August 13, 2015, the plaintiff, who is incarcerated at the Mount Olive Correctional Complex ("MOCC"), in Mount Olive, West Virginia, filed a Complaint under 42 U.S.C. § 1983 against Lisa Boggs, a supervisor of the Postal Unit at MOCC, David Ballard, the Warden at MOCC, and James Rubenstein, the Commissioner of the West Virginia Division of Corrections ("WVDOC"). The Complaint alleges violations of the

plaintiff's rights under the First and Fourteenth Amendments of the United States Constitution, various provisions of the West Virginia Constitution and state regulations, and a state law tort claim of conversion, arising out of the seizure and non-delivery of several pieces of mail.  (ECF No. 2).  Specifically, the plaintiff alleges that, on February 5, 2015, he received two mail refusal forms from the MOCC contract postal unit dated February 4, 2015 concerning:

(1) catalog(s); and

(2) book(s), newspaper(s), or magazine(s) not received directly from the publisher "COPIES NOT ALLOWED" received from Steven Saines, and costing $1.89 to mail out.

(*Id.* at 4, ¶ 20).  The plaintiff further alleges that, on February 13, 2015, he asked MOCC's contract postal unit for more information concerning the refused mail "in order to have an opportunity to protest (or accept) the prison's censorship of mail from Steve Saines." (*Id.*, ¶ 21).  According to the Complaint, on February 19, 2015, defendant Lisa Boggs returned the plaintiff's request with a note saying:  "Both refusal[s] stand as written.  I have reviewed both refusals both items are against policy.  If no action both refusals will be disposed of per policy."  (*Id.*, ¶ 23).

The Complaint further notes that the WVDOC has a written policy, contained in Policy Directive 503.03, prohibiting the receipt of catalogs by inmates.  (*Id.*, ¶ 24). Apparently, there are also restrictions concerning the receipt of copies from books, newspapers or magazines, of which the plaintiff claim he was unaware.  (*Id.*, ¶ 26).[1]  The Complaint alleges that the plaintiff learned of a report by the National Academy of Science on memory and eyewitness identification (hereinafter "NAS Report"), which the plaintiff

---

[1] Policy Directive 503.03 also restricts the receipt of hard cover and soft cover publications, magazines, and newspapers by inmates unless such items are sent directly by the publisher or book retailer.  Policy Directive 503.03, § VD.

2

believed would be helpful to his attempts to obtain habeas corpus relief concerning his state murder conviction. (*Id.* at 5-10, ¶¶ 27, 39-45).[2] Thus, after several unsuccessful attempts to gain access to a copy of the NAS report by making written requests to the law library and other sources, including the NAS, on or about January 5, 2015, the plaintiff requested that Steve and Sherri Saines attempt to locate the report and send a copy to him. (*Id.* at 5-6, ¶¶ 27-37). The Saines located the report and mailed a copy to the plaintiff "in loose-leaf form." (*Id.* at 6, ¶ 38). The plaintiff contends that the defendants have withheld this mail item as being "copies of books." (*Id.*)

Although the plaintiff's Complaint is not a model of clarity, it appears to further allege that the Saines also attempted to mail the plaintiff a book catalog published by Edward R. Hamilton (hereinafter "the book catalog"), which was also withheld from the plaintiff. (*Id.* at 10, ¶¶ 46-47). However, the plaintiff alleges that, on August 3, 2015, he saw an earlier version of the same catalog on his housing unit. (*Id.*, ¶ 48).

The plaintiff claims that he was denied due process of law because he did not receive fair notice regarding the censorship of the NAS Report and the book catalog - specifically what was being censored and why - in order that he would (a) have "a reasonable opportunity to protest and (if necessary) (b) so courts can properly evaluate censorship claims/defenses." (*Id.* at 11). The plaintiff further claims that the prison's blanket catalog ban is over-broad and not justified by the alleged "waste-avoidance" rationale for the policy asserted by the WVDOC. The plaintiff contends that the policy suppresses inmates' personal First Amendment rights and rights concerning commercial

---

[2] The plaintiff's Complaint provides several pages of details concerning his murder case, apparently in an attempt to justify why the NAS report would be helpful to his case. However, these details are irrelevant to this court's determination of whether the Complaint sufficiently states a violation of the plaintiff's First and Fourteenth Amendment rights due to the refusal to deliver his mail.

speech. (*Id.* at 11-13). The plaintiff seeks declaratory and injunctive relief, including the delivery of the mail that was withheld, as well as monetary damages. (*Id.* at 13-14).

On February 20, 2017, following service of process, the defendants, collectively, filed a Motion to Dismiss Complaint (ECF No. 14) and a Memorandum of Law in support thereof (ECF No. 15). The defendants assert that, in their official capacities, they are not persons who can be sued under section 1983 and are entitled to sovereign immunity from damages under the Eleventh Amendment. The defendants' motion documents further assert that, to the extent that they are sued in their individual capacities, the plaintiff has not established a violation of his constitutional rights due to the withholding of certain pieces of his mail and, thus, they are entitled to qualified immunity on the plaintiff claims. Finally, they assert that the Complaint is frivolous and should be dismissed under 28 U.S.C. § 1915A.

On May 4, 2017, the plaintiff filed a Response to the defendants' Motion to Dismiss and a Request for Appointment of Counsel (ECF No. 22).[3] The plaintiff's Response asserts that his Complaint is legally sufficient to proceed beyond a motion to dismiss, especially in light of the fact that the court screened the case under 28 U.S.C. § 1915A before ordering service of process.[4] The plaintiff's Response further clarifies that his claims are brought against the defendants in both their individual and official capacities, and that Eleventh Amendment immunity does not apply to his claims for declaratory and injunctive relief or his claims for damages against the defendants in their individual capacities. (*Id.* at 2). He further asserts that the catalog ban is "an official prison policy" and that the

---

[3] The plaintiff's request for appointment of counsel has been denied by separate Order.
[4] Upon initial screening, the undersigned determined that it would be better to receive a responsive pleading from the defendants concerning the plaintiff's claims and any defenses thereto. The decision to serve process after initial screening under section 1915A does not prohibit a dismissal of a claim pursuant to a Rule 12(b)(6) motion.

4

defendants have "inaccurately and dishonestly labeled" the items withheld from him as "book(s), newspaper(s) or magazine(s) not directly received from the publisher" with "COPIES NOT ALLOWED." (*Id.*) He further appears to contend that this statement "lack[s] any meaningful description for due process purposes." (*Id.*) Thus, he requests that the defendants' Motion to Dismiss be denied. The defendants did not file a reply brief. This matter is ripe for adjudication.

## STANDARD OF REVIEW

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that

5

>states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. * * *
>
>In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-679.

## ANALYSIS

The Complaint does not specify whether the plaintiff is suing the defendants in their individual or official capacities, or both. In such cases, courts in this circuit follow the "course of proceedings" test to determine the capacity in which an official is being sued. *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). Under that test, "the court must examine the nature of the plaintiff's claims, the relief sought and the course of the proceedings to determine whether a state official is being sued in a personal capacity." *Id.* Relevant factors include: (1) whether the plaintiff fails to allege that the defendants' actions were "in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the fact [sic; face] of the complaint[;]" (2) whether the plaintiff seeks compensatory or punitive damages (which are unavailable in official capacity suits); and (3) "the nature of any defenses raised in response to the complaint . . . ." Because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally." *Id.* (citations omitted). Finally, courts should keep in mind "whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." *Id.*

6

As stressed by the defendants in their Memorandum of Law, in *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the *Biggs* factors as follows:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendants acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Id. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 F. App'x 432, 435 (4th Cir. 2003). (ECF No. 15 at 5).

The defendants note that the plaintiff has named each defendant by name and employment position, which, they assert, evidences an intent to name them in their official capacities. (*Id.* at 4). Furthermore, the plaintiff is clearly challenging the conduct of the defendants in relation to an official prison policy directive and he seeks declaratory and injunctive relief related to that policy. However, he also seeks monetary damages, which, as addressed below, may only be pursued against state officials in their individual or personal capacities. Moreover, the defendants have asserted a qualified immunity defense, which demonstrates their interpretation that the plaintiff's claims are brought, at least in part, against them in their individual or personal capacities. Thus, the undersigned construes the Complaint to be brought against the defendants in both their official and individual capacities and will address each type of claim and the defendants' defenses thereto herein.

7

### A. Official capacity claims.

The defendants assert that, to the extent that the plaintiff has brought claims against them in their official capacities, any claims for monetary damages cannot survive because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes. In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.
>
> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed. [Citations omitted].

Furthermore, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). Thus, the Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose monetary liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that all of the defendants are immune from liability for monetary damages in their

official capacities under the Eleventh Amendment and, in their official capacities, are not persons who can be sued under 42 U.S.C. § 1983. Accordingly, such claims must be dismissed.

### B.     Individual capacity claims.

The plaintiff's Complaint asserts that the defendants' conduct resulted in violations of his constitutional rights to freedom of speech, freedom of association, and petition for redress of grievances under the First Amendment to the United States Constitution, and due process of law under the Fourteenth Amendment, as well as similar violations of analogous sections of the West Virginia Constitution, and various state regulations. He also asserts a state law claim of conversion for the "unlawful appropriation" of his property. All of these claims stem from the refusal to deliver the NAS report and the book catalogue described *supra*. The undersigned will address each claim in turn.

### *The plaintiff's First Amendment and equivalent state constitutional claims*

The plaintiff's First Amendment claims arise out of the alleged "censorship" of his mail, which the defendants contend was properly withheld pursuant to the prison's policy directives or regulations concerning mail privileges and incoming publications. Specifically, the Complaint addresses the withholding of the NAS Report and the book catalogue, both of which were mailed to the plaintiff by Steve and Sherri Saines. The plaintiff's Complaint, liberally construed, alleges that the withholding of this mail violated his rights to freedom of speech and freedom of association under the First Amendment and the equivalent provisions under the West Virginia Constitution.

From the factual allegations contained in the Complaint, it is inferred that both items were withheld pursuant to Policy Directive 503.03 concerning "Incoming Publications." In pertinent part, the Policy Directive states as follows:

> Except when precluded by statute, the West Virginia Division of Corrections shall permit an inmate to subscribe to and receive publications without prior approval; and (through established procedures within this Policy Directive) to determine if an incoming publication is detrimental to the security, discipline, and good order of the institution/facility/center or if it might facilitate criminal activity. <u>The term publication as used in this Policy Directive, means a book, booklet, pamphlet, or similar document, or a single issue of a magazine, periodical, newsletter, or newspaper. For the purpose of this Policy Directive, catalogs shall not be considered permissible publications, and therefore, shall not be permitted to be received by inmates.</u>

Policy Directive 503.03, § I (eff. Nov. 1, 2009) (emphasis added). Significantly, the Policy Directive further provides that inmates "may receive hard cover and soft cover publications, magazines, and newspapers <u>only from the publisher or book retailer</u>." *Id.*, § VD (emphasis added). The Warden or facility administrator may only make exception to this policy if the publication is no longer available from the publisher or retailer. *Id.*, § VE. The plaintiff's Complaint alleges that the defendants have "dishonestly and inaccurately labeled" the NAS Report as a copy of a book. (ECF No. 2 at 11). It further alleges that the catalog ban contained in Policy Directive 503.03 is "overly-broad." (*Id.*)

While prisoners maintain certain constitutional protections, including those under the First Amendment, the Constitution does permit greater restriction of such rights. *Beard v. Banks*, 548 U.S. 521, 528 (2006). (ECF No. 15 at 9). The defendants' Memorandum of Law asserts that correctional officials are granted wide discretion to develop policies and procedures designed to maintain safety and order within correctional facilities. *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 326 (2012). (*Id.*) They further emphasize that the Supreme Court has determined that, so long as the

regulation is reasonably related to a legitimate penological interest, such regulation, despite impinging upon an inmate's constitutional rights, will be upheld. (*Id.*) As noted in the defendants' Memorandum of Law, the Supreme Court has established certain factors that must be weighed in determining the reasonableness of a challenged prison regulation. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) (partially superseded by statute on other grounds).

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. * * *
> A second factor relevant in determining the reasonableness of a prison restriction is whether there are alternative means of exercising the right that remains open to prison inmates. A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.

*Id.* at 89 (internal citations omitted). (ECF No. 15 at 9-10).

A prisoner's rights concerning inmate mail are governed by the First Amendment and the restriction of the same may be justified in furtherance of substantial governmental interests of security, order or rehabilitation, and giving appropriate deference to the decisions of prison administrators. *See Procunier v. Martinez*, 416 U.S. 396, 413-414 n.14 (1974), *overruled on other grounds, Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail, as well as greater protection to outgoing mail than to incoming mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Thornburgh*, 490 U.S. at 413). Furthermore, courts have previously held that isolated incidents of mail tampering are usually insufficient to establish a constitutional violation. Rather, an inmate must show

11

that prison officials "regularly and unjustifiably interfered with" his or her mail. *See, e.g., Buie v. Jones*, 717 F.2d 925, 926 (4th Cir. 1983); *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Morgan v. Montanye*, 516 F.2d 1367, 1371 (2d Cir. 1975).

The defendants' motion documents do not specifically address the withholding of the NAS Report. Nevertheless, contrary to the plaintiff's assertion, the NAS Report clearly appears to fall into the category of publications under Policy Directive 503.03 that are required to be sent by the publisher or retailer, and may not be received from private third parties, such as the Saines. As such, the undersigned proposes that the presiding District Judge **FIND** that the court should defer to the decisions of the correctional officials to withhold that item in accordance with the Policy Directive. Furthermore, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has alternative means of obtaining the NAS Report within the reasonable parameters of the Policy Directive.[5]

Additionally, both parties note that another judge of this court previously upheld the constitutionality of Policy Directive 503.03 in *Dixon v. Kirby*, 210 F. Supp.2d 792 (S.D. W. Va. 2002). As noted in the defendants' Memorandum of Law, the plaintiff in *Dixon* alleged that the facility's adherence to Policy Directive 503.03 in denying his receipt of certain catalogs and magazines violated his constitutional rights. However, the Court held that:

> Regulations may be adopted which advance both security and administrative interests though they may limit or restrict inmates' constitutional rights. The logical connection between these interests and the challenged regulations are hardly so remote as to render the policy

---

[5] The NAS Report is a 170-page book that is available for purchase in paperback or e-book form from the National Academies Press.

12

> arbitrary or irrational. Prison officials must provide minimal procedural safeguards in limiting or restricting inmates' mail, including notice to both inmates and the senders if it does not create an undue burden.

*Id.* at 788 (internal citations omitted). (ECF No. 15 at 10-11). The *Dixon* court found the policy to be neutral because it restricted all catalogs without regard to content and further determined that the policy was reasonably related to the legitimate penological interests of administrative order and allocation of resources. (*Id.*) The defendants' Memorandum of Law notes:

> The Court went on to state that to allow inmates to have such catalogs would necessitate the implementation of additional processes, including the screening of catalogs and notifying publishers regarding content not allowed in the prison, which would require the prison to allocate resources to the effort. *Id.* at 800. The Court also found that there is no evidence Policy Directive 503.00 itself is arbitrary. *Id.* at 800. Ultimately, the Court stated that, "Plaintiff has failed to demonstrate that the prison's refusal to deliver the catalogs which he ordered to him violated or infringed upon any constitutionally protected right." *Id.* at 801.
>
> In the instant case, it is evident from Plaintiff's Complaint that his mail was withheld pursuant to Policy Directive 503.03. As the Supreme Court has clearly stated, such regulations must be given deference by the courts. Additionally, as this Court held in *Dixon*, the prison's refusal to deliver the catalogs to Plaintiff did not infringe upon any of his constitutionally protected rights. As such, plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed.

(*Id.*)

The plaintiff's Complaint attempts to distinguish his case on the basis that the *Dixon* Court found that inmates had a reasonable alternative to access catalogs that were offered through the commissary. The plaintiff alleges that "the prison commissary is now run by a for-profit corporation (Keefe), and they do not make catalogs available to the inmate population." (ECF No. 2 at 11).

He further contends that the *Dixon* case failed to address the First Amendment protections afforded to "commercial speech," and he claims that such rights may be

13

asserted "by those who wish to receive commercial information as well as those who communicate it." (*Id.* at 12). However, the case law cited in the Complaint to support this contention involves cases brought by publishers, and the plaintiff has no standing to assert such rights. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted with respect to commercial speech rights under the circumstances alleged therein.

Moreover, the undersigned further proposes that the presiding District Judge **FIND** that Policy Directive 503.03 is rationally related to the legitimate penological interests concerning administrative order and security concerns. As noted in *Dixon*:

> The Fourth Circuit found it perfectly appropriate in *United States v. Stotts*, [925 F.2d 83, 87-88 (4th Cir. 1991)], for a prison's administration to develop regulations restricting inmates' receipt of mail in anticipation of prospective security concerns and indicated the same is true in addressing administrative concerns. Accordingly, the undersigned finds that there is a clear rational connection between the regulation prohibiting inmates' receipt of catalogs and the prisoner's legitimate and neutral administrative interest.

210 F. Supp.2d at 800.

Finally, because the plaintiff's Complaint involves an isolated incident of withholding his mail that appears to be justified by the prison's Policy Directive, the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state a claim upon which relief can be granted with respect to the plaintiff's rights under the First Amendment and the equivalent provisions of the West Virginia Constitution.[6]

---

[6] The plaintiff has also alleged in a conclusory manner that his rights to petition for redress of grievances and to access the court, and his habeas corpus rights have been denied. However, the allegations in the Complaint do not support such claims. The Complaint is silent as to whether the plaintiff filed and properly exhausted the administrative grievance process and he, of course, has accessed the court to file the instant lawsuit to attempt to redress his grievances. If the plaintiff's contentions are grounded, instead, in the inability to obtain the NAS Report for use in his habeas corpus proceeding, the undersigned proposes that

14

### *The plaintiff's due process claims*

The defendants' motion documents do not address the plaintiff's due process claim in detail. The basis of this claim appears to be that the plaintiff did not receive fair notice and an opportunity to protest the withholding of his mail. The plaintiff's Response specifically asserts that the description addressing the denial of the NAS Report as "book(s), newspaper(s), or magazine(s) not received directly from the publisher" and "COPIES NOT ALLOWED" is "lacking any meaningful description for due process purposes." (ECF No. 22 at 2).

"The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment. As such, it is protected from arbitrary governmental invasion." *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). However, an inmate is only entitled to minimal due process protections that include: (1) notification that the mail has been withheld; (2) a reasonable opportunity to protest the decision; and (3) that the complaint be referred to a prison official other than the one who made the decision to withhold the mail. *Procunier*, 416 U.S. at 418-419; *see also Young v. Weathersby*, No. 1:09-cv-67, 2010 WL 3909463, *9 (W.D. Mich. Sept. 15, 2010).

Taking the allegations in the Complaint as true, it appears that the plaintiff was afforded the minimal due process that was required under the circumstances. He received notice of the withholding of the mail items and was afforded an opportunity to

---

the presiding District Judge **FIND** that the Complaint fails to sufficiently allege such a claim and, moreover, such a claim appears to be speculative and too remote from the instant allegations to be actionable.

protest the withholding. Furthermore, the mail refusal was reviewed and upheld by defendant Boggs. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a plausible due process claim based upon the withholding of the subject mail under either the Fourteenth Amendment or the analogous state constitutional provisions.

### *The plaintiff's state law claims*

In light of the finding that the Complaint fails to sufficiently state any federal claims, the court may decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c). Nevertheless, should the presiding District Judge determine to exercise jurisdiction over the plaintiff's state law claims, the undersigned proposes that the presiding District Judge **FIND** that such claims are also subject to dismissal under Rule 12(b)(6).

First, to the extent that the plaintiff is attempting to raise any independent claims for relief based upon violations of state regulations, such claims are not cognizable under section 1983 and the plaintiff has not alleged any state law authority affording a private right of action under the cited regulations. Second, to the extent that the plaintiff has also attempted to assert a state law tort claim of conversion (based upon the "unlawful appropriation of another's property"), the essence of a claim of conversion is that, "irrespective of good or bad faith, care or negligence, knowledge or ignorance," the defendant <u>wrongfully</u> exercised dominion over the personal property of another (or in other words, without a legal right to do so). *See Rodgers v. Rodgers*, 399 S.E.2d 664, 677 (W. Va. 1990). Because the plaintiff has not sufficiently demonstrated that the withholding of his mail was "wrongful" or "unlawful," the undersigned proposes that the presiding District Judge **FIND** that the Complaint fails to state a plausible claim of

conversion under West Virginia law. Similarly, the plaintiff cannot sufficiently establish a basis for a plausible claim under the provisions of the West Virginia Constitution governing unlawful searches and seizures or unlawful taking of property.[7]

## **RECOMMENDATION**

For the reasons stated herein, the undersigned proposes that the presiding District Judge **GRANT** the defendants' Motion to Dismiss (ECF No. 14) and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S.

---

[7] The plaintiff seeks a declaration that the conduct of the defendants violated his property rights under Article III, §§ 1, 6, 9 and 10 of the West Virginia Constitution. (ECF No. 2 at 13-14). Section 6 governs unlawful searches and seizures. However, a prisoner has no right to privacy in his incoming mail that could support such a claim, and regulation of unprivileged prison mail is "essentially an administrative matter in which the courts will not intervene." *United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999). Furthermore, to the extent that the plaintiff has cited sections 9 and 10 of Article III of the West Virginia Constitution, section 9 governing the taking of private property for public use appears to be wholly inapplicable to the plaintiff's allegations, and section 10 governs due process protections, which have already been addressed herein.

140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing party and Judge Goodwin.

    The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

<u>July 25, 2017</u>

Dwane L. Tinsley
United States Magistrate Judge